LEISEN and another, Appellants, vs. ROBERTS and others, Respondents.

*October 1 — December 15, 1891.*

*Fraudulent conveyances: Evidence.*

In an action, in aid of an execution, to set aside as fraudulent conveyances of land by the judgment debtor to one D. and by D. to the minor daughters of the debtor, the evidence is *held* to sustain the findings of the trial court to the effect that there was no fraud, the land having been originally purchased with money furnished by D., who, being the real owner thereof, conveyed the same as a free gift to the daughters of the debtor.

APPEAL from the Circuit Court for *Outagamie* County. The facts will sufficiently appear from the opinion. The plaintiffs appeal from a judgment dismissing the complaint.

For the appellants there was a brief by *Simpson & Scudder*, and oral argument by *H. T. Scudder*.

*Thos. R. Hudd*, for the respondents.

COLE, C. J. This is a creditors' bill in aid of an execution. The case really involves no legal question, but only a question of fact. The plaintiffs are judgment creditors of the defendant *Merit E. Roberts*. The object of the suit is to reach real estate which was conveyed to the other defendants by one Diamond, which conveyance, it is alleged, was fraudulent and void as to the creditors of *Merit E. Roberts*. The defendants *Minnie M.* and *Lottie F. Roberts* are his minor daughters. The title to the lands in controversy was in Diamond in September, 1884. He and *Merit E. Roberts* had had many business transactions with each other before that time, and *Roberts* was then owing Diamond several thousand dollars for moneys advanced for various purposes. The *bona fides* of this indebtedness is not seriously questioned. At all events, it is fully estab-

lished by the evidence to a considerable amount. Indeed, it satisfactorily appears that the land in question was originally purchased by Diamond, or with money furnished by him, and the title to some of it was conveyed to *Roberts* by mistake. But there is no room to doubt but Diamond was the real owner of the land, having paid for it with his own money, though there was a verbal understanding that he would convey it to *Roberts* when the latter paid the purchase money. The lands were originally "pine choppings," and *Roberts* cultivated and improved them to some extent as and for a farm, and received what crops were raised from them. *Roberts* himself was hopelessly insolvent at this time, and had been for years.

In September, 1884, Diamond and *Roberts* had a settlement of their dealings with each other, and *Roberts* sold and transferred to Diamond a quantity of cattle, cord-wood, agricultural implements, a livery and saloon building, livery stock, liquors, and other personal property, for the consideration of $8,000, as stated in the bills of sale, to apply on his indebtedness. Diamond did not have the benefit of all this property, but left a large portion of it in the possession of *Roberts*, who used and enjoyed it, and always retained it. How the accounts then stood between the parties is not made clear by the testimony, and it is impossible to form any certain conclusion upon that point. The learned circuit judge found, in effect, that after these transfers *Roberts* remained still in debt to Diamond, but that the latter accepted the property as payment of his claims against *Roberts*. There is certainly considerable testimony tending to support that view. We do not understand that at the settlement the purchase price of the lands was paid Diamond, but that he discharged all his other claims in consideration of the property turned over to him. All the material evidence in the case as to these business transactions between the parties is the testimony

of the parties themselves, and they kept no account so as to tell how they stood. But, at the time of the settlement, Diamond conveyed to the minor daughters of *Roberts* the land in controversy, and this is the conveyance which it is sought to impeach and set aside.

The circuit judge found that this deed by Diamond was a free gift made by him to such minors, and that it is valid as against the father's creditors. Of course, if the lands were really the property of Diamond, he had the right to give them to whomever he saw fit. It does not appear that *Roberts*, by virtue of the verbal understanding that he was to have the lands when he paid the purchase money, had any equities in them which he could enforce. He had made some improvements on them, and cultivated them, but if any equities existed in his favor they were certainly not valuable to any one. Moreover, it does not appear that *Roberts* objected to Diamond's conveying the lands to his daughters, but consented to the conveyance, and this circumstance is much relied on as tending to prove that the title was taken by the daughters in trust for their father, who, it is claimed, was the real owner.

There are surely some things attending the transaction which are left so much in the dark as to raise a suspicion as to the honesty and good faith of the conveyance. Confessedly it was voluntary, but a conveyance cannot be adjudged fraudulent as against creditors wholly on the ground that it was not founded on a valuable consideration. The statute so declares. R. S. sec. 2323. It may seem improbable that Diamond should make a gift of the lands to *Roberts'* minor daughters, as he said he did, and as the court below found. But his relations to *Roberts* and his family were of the most intimate and friendly character. This all the evidence shows. He had aided *Roberts* in his business by advancing him money at different times. That fact is also clearly established. He had boarded with, and had a

home with, *Roberts'* family for two years, and had paid nothing for his board. He undoubtedly wished to assist the family in some substantial way, and he says, in effect, that he made the conveyance to the children because they had nothing, no place to go, and so that they and their father and his family would have a home. If he made the conveyance to the father, he thought he would "throw it away and spend it," so there was no use in giving it to him. These are some of the reasons he gives for making the conveyance to the children. They are not so strange or unnatural as to discredit his testimony.

The stress of the case turns upon the fact whether Diamond owned the lands when he conveyed them. If he did, it is manifest the conveyance is valid as against the plaintiffs. They cannot impeach it for fraud, though the property as situated may inure to the benefit of *Roberts*. It is said the evidence shows that Diamond had been paid for all his advances, including the purchase price of the lands, so that they actually, in equity, belonged to *Roberts*. But the court did not so find, but reached substantially a contrary conclusion. Such finding cannot be said to be unsupported by the evidence, for all the direct testimony which we have on the point sustains it. Due weight must be given to the finding, notwithstanding we may have some suspicions as to the integrity of the conveyance. We surely are not warranted in saying that the evidence clearly shows that the title to the lands was originally vested in Diamond as a cover, with the intent on his part and on that of *Roberts* of placing them beyond the reach of *Roberts'* creditors, and that the property was conveyed to the daughters in furtherance of the same fraudulent design. Even if the conveyance was purely a voluntary one, still, if the lands belonged to the donor, the transfer could not be questioned by *Roberts'* creditors. This is very obvious. But it would be unprofitable to further discuss the evidence of the case. Our

conclusion is that the judgment of the circuit court is warranted by the evidence and findings, and it must be affirmed.

*By the Court.*— It is so ordered.